AO 91 (Rev. 11/11) Criminal Complaint AUSA Albert Berry III (312) 886-7855



FILED
8/26/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

BRIAN HAYWOOD and
MARQUEES FRENCH

CASE NUMBER: 20 CR 546

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about August 25, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(d)(1) | selling and otherwise disposing of a firearm, namely a Taurus, model TH40, .40 caliber semiautomatic pistol, bearing serial number SLT00163, to a person, knowing and having reasonable cause to believe that such person had been convicted, in any court, of a crime punishable by imprisonment for a term exceeding one year |

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

THOMAS CALLAGHAN
Special Agent, Federal Bureau of Investigation (FBI)

Pursuant to Fed. R. Crim. P. 4.1, this complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: August 26, 2020

Judge's signature

City and state: Chicago, Illinois

SHEILA FINNEGAN, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

## AFFIDAVIT

I, THOMAS CALLAGHAN, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July 2010. My current responsibilities include the investigation of violent crimes, including, among others, homicides, kidnaping, and bank robbery, and the apprehension of violent fugitives.

2. This affidavit is submitted in support of a criminal complaint alleging that BRIAN HAYWOOD and MARQUEES FRENCH have violated Title 18, United States Code, Section 922(d)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging HAYWOOD and FRENCH with selling or disposing a firearm to a person they knew or had reasonable cause to believe was a felon, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, information provided to me by a confidential source, and information obtained from audio and video recordings.

## FACTS SUPPORTING PROBABLE CAUSE

### A. Background of Investigation

4. Since July 29, 2020, the FBI has been investigating HAYWOOD for being a straw purchaser for firearms for individuals in the Chicagoland area. In July of 2020, the FBI received information that HAYWOOD sold his services to individuals in Chicago and its surrounding suburbs as a straw purchaser for firearms out of Indiana. The true purchaser of a firearm would travel to Hammond, Indiana to meet with HAYWOOD, supply HAYWOOD with US currency, and tell HAYWOOD the type of firearm the true purchaser wanted. HAYWOOD would then request a fee on top of the purchase price of the firearm (half of which he would take before going into the store), go into a federally licensed firearms dealer ("FFL"), and purchase a firearm. Upon purchasing the firearm, HAYWOOD would fill out an ATF 4473 form falsely certifying that he was the true purchaser of the firearm. Upon receiving the firearm, HAYWOOD would exit the FFL, give the true purchaser the firearm, and collect the other half of his fee.

5. On July 30, 2020, August 5, 2020, and August 14, 2020, HAYWOOD purchased a firearm in the above described manner at two separate stores in Hammond, Indiana for a confidential source ("CS"), who unbeknownst to HAYWOOD was working with the FBI.[1] Each time for the service of buying the firearm, HAYWOOD accepted an additional fee of $250 per handgun.

---

[1] The CS has prior convictions for firearms related offenses, and, as a result of cooperating with state law enforcement officials, CS received a reduced sentence on one of his cases. Since 2017, the FBI has paid the CS approximately $ 17,000 to compensate the CS for his assistance

B. **Sale of Firearm in Chicago on August 25, 2020**

6. On August 24, 2020, the CS received a text message from a number that the CS knew to be HAYWOOD's.[2] In the text message, HAYWOOD told the CS that HAYWOOD had a firearm to sell. HAYWOOD sent the following picture of the firearm to the CS.



7. On the same day, at the FBI's direction, by text message, the CS told HAYWOOD the CS was interested in purchasing the firearm. HAYWOOD replied

---

in this and prior investigations. On prior occasions, the CS has provided the FBI with truthful information, which has been independently corroborated and has led to arrests and convictions for weapons related offenses.

[2] This affidavit references several text messages between HAYWOOD and the CS. I have reviewed the text messages between HAYWOOD and the CS referenced herein.

3

that the firearm was already sold. Later that day, HAYWOOD sent the following picture to the CS and informed the CS that he had a shotgun for sale.



8. On the same day, via text message, the CS informed HAYWOOD that he was not interested in purchasing the shotgun. HAYWOOD sent the CS another text message later in the day, informing the CS that HAYWOOD knew about another firearm for sale. HAYWOOD sent the CS the following picture:

4



9. Through text messages, HAYWOOD informed the CS that the firearm was an XD 40 and that it cost "12". HAYWOOD stated that he and the owner of the gun would "slide" to Chicago the next day at 10 or 10:30. HAYWOOD told the CS to "just get me together like last time." Based on my communications with the CS and my knowledge of the ongoing investigation, through these text messages, HAYWOOD told the CS that the firearm would cost $1,200 and that he and the owner of the firearm would drive out to Chicago the next day to make the sale. Additionally, HAYWOOD informed the CS that he was to pay HAYWOOD $250 for his services in brokering the deal for the firearm.

10. On August 25, 2020 HAYWOOD texted the CS to make sure the sale was still going to proceed as planned. The CS told HAYWOOD that he would be ready soon and told HAYWOOD where they would meet.

11. Prior to meeting HAYWOOD, the CS was searched for contraband, which yielded negative results. The CS was given audio/video recording equipment

5

which captured the meeting. Additionally, the CS was given $1,500 of prerecorded money to conduct the transaction, $1,200 for the purchase of the firearm and $250 for HAYWOOD as payment for facilitating the sale. [3]

12. Under law enforcement surveillance, the CS traveled to a parking lot at the intersection of W. 95th Street and Ashland Avenue in Chicago, Illinois. While conducting surveillance, law enforcement observed a blue Dodge Durango drive into the parking lot. According to Indiana records, this vehicle is registered to MARQUEES FRENCH in Hammond, Indiana. FRENCH was driving the vehicle and HAYWOOD was in the front passenger's seat. Law enforcement observed the CS get out of the CS's vehicle and get into the back seat of the blue Dodge Durango.

13. According to the CS, and as confirmed by the recording, once inside the vehicle, the CS spoke with both HAYWOOD and FRENCH. I have reviewed the audio/video footage. While inside the Dodge Durango, after FRENCH exclaimed, "You buying all pipes [guns]. I got a FN [brand of gun]." The CS replied, "I can't buy these bitches [guns]. I got a felony and shit."[4]

14. According to the CS, while he was inside the Durango, HAYWOOD handed him the firearm. After he was given the firearm by HAYWOOD, the CS counted $1,200 and gave it to FRENCH and counted $250 and gave it to HAYWOOD.

---

[3] Prior to giving the CS the $1,500, law enforcement recorded the serial numbers of the US currency.

[4] Quotations of recordings in this affidavit represent draft transcripts of the conversations. I have included information in brackets interpreting words and phrases based upon my training and experience, my knowledge of the investigation, and conversations with the CS and others.

The CS exited the vehicle, got back into his vehicle and started to drive away. When FRENCH attempted to leave the parking lot, he was stopped, and HAYWOOD and FRENCH were arrested by law enforcement.

15. The CS provided a Taurus, model TH40, .40 caliber semiautomatic pistol, bearing serial number SLT00163 to agents, as well as the remaining buy funds. A search of the CS and his vehicle revealed no additional contraband. Additionally, law enforcement recovered $1,200 of the prerecorded buy money from FRENCH and $250 of the prerecorded buy money from HAYWOOD.

### C. The Criminal History of the CS

16. According to court records, in 2017, in the Circuit Court of Cook County, the CS was convicted of the Class 2 felony of unlawful possession of a firearm by a gang member, a crime punishable by imprisonment for a term exceeding one year.

### D. Interview of HAYWOOD

17. On August 25, 2020, after he was arrested, HAYWOOD was taken back to the FBI building and read his *Miranda* rights. HAYWOOD waived those rights and agreed to speak with law enforcement. During the recorded conversation with law enforcement, HAYWOOD admitted that he was aware the CS was a convicted felon. HAYWOOD acknowledged that each time he met the CS to provide the CS with a firearm, the CS informed him that the CS was a felon.

18. HAYWOOD stated that he had sold firearms to the CS on three separate occasions prior to the arrest.[5] HAYWOOD saw that FRENCH was trying to sell a handgun on Snapchat, so HAYWOOD set up the buy with the CS. HAYWOOD stated that on August 25, 2020, he met FRENCH at FRENCH's residence in Hammond, Indiana. FRENCH then drove HAYWOOD to an unknown residence in either Hammond or Gary, Indiana. Once they arrived at this residence, a woman placed a firearm into the backseat of FRENCH's vehicle, and the woman followed FRENCH and HAYWOOD in her own vehicle. The woman was supposed to follow FRENCH and HAYWOOD to the buy location, but she became separated in traffic on the way and did not make it. HAYWOOD believes the gun belonged to the woman. HAYWOOD further admitted that he had previously sold a firearm to a separate individual.

### E. Interview of French

19. Additionally, on August 25, 2020, after he was arrested, FRENCH was taken back to the FBI building and read his *Miranda* rights. FRENCH waived those rights and agreed to speak with law enforcement. In a recorded interview, FRENCH stated he uses Snapchat to post firearms for sale. These firearms are not FRENCH's, but he posts the pictures on Snapchat for friends. FRENCH stated HAYWOOD reached out to him through Snapchat regarding the sale of a firearm FRENCH posted on August 24, 2020. FRENCH informed HAYWOOD that the firearm was sold

---

[5] These prior transactions were conducted with the knowledge, and under the direction, of the FBI.

8

already. FRENCH then told HAYWOOD he knew of another gun for sale and made plans to sell it to the CS through HAYWOOD. FRENCH stated HAYWOOD met him at a house in Hammond, Indiana. FRENCH drove HAYWOOD in his blue Dodge Durango to a woman's house in Gary, Indiana where they picked up the firearm. FRENCH knew the woman and told her he would sell the firearm for her for $1,200.00. The woman followed FRENCH and HAYWOOD but ended up getting lost on the way to Chicago.

## CONCLUSION

20. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that, on or about August 25, 2020, defendants BRIAN HAYWOOD and MARQUEES FRENCH did dispose and sell a firearm to a felon, while knowing or having reasonable cause to believe that such person was a felon, in violation of Title 18, United States Code, Section 922(d)(1).

FURTHER AFFIANT SAYETH NOT.

_____
THOMAS CALLAGHAN
Special Agent, Federal Bureau of Investigation

SUBSCRIBED AND SWORN to telephonically on August 26, 2020.

_____
Honorable SHEILA FINNEGAN
United States Magistrate Judge

9